**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:11-CV-1831** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **CAPTAIN CRAVER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**REPORT AND RECOMMENDATION**

I.    **Introduction**

In the Prison Litigation Reform Act, Congress established a series of

procedures relating to prisoner civil litigation in federal court, procedures "designed

to filter out the bad claims and facilitate consideration of the good." Jones v. Bock,

549 U.S. 199, 204 ( 2007).  One critical component of these reforms calls upon

federal courts to perform a gatekeeping function with respect to *pro se* inmates who

repeatedly seek leave to proceed *in forma pauperis* while filing frivolous or meritless

claims.  As part of this statutorily mandated process, we are obliged to screen civil

complaints lodged by *pro se* litigants who wish to proceed *in forma pauperis*, deny

such leave to prisoners who have on three or more prior occasions filed frivolous or

1

meritless claims in federal court, and dismiss these inmate complaints, unless the inmate alleges facts showing that she is in imminent damage of serious bodily harm. 28 U.S.C. §1915(g).

In the instant case, we are now called upon to perform this function, a function which is an integral part of these Congressional "reforms designed to filter out the bad claims and facilitate consideration of the good"in this field  Jones v. Bock,  549 U.S. 199, 204( 2007). Upon consideration of this case, we conclude that the plaintiff, Dawn Marie Ball, has not, and cannot, credibly allege that she is in imminent damage of serious bodily harm as a result of the acts alleged in this complaint.  Therefore, she may not take advantage of the imminent damage of serious bodily harm exception to §1915(g).  However, we further find that, at present, Ball has only had two cases that were dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g), since one of the prior dismissal orders in previous litigation was based upon Ball's failure to exhaust her administrative remedies in the prison system, a ground for dismissal that typically is not considered a "strike" for purposes of §1915(g)'s three strike rule.

Having made these findings, we recommend that the Court deny the motion to revoke *in forma pauperis* status.  However, given that we find that Ball has already incurred two strikes under §1915(g)'s three strike rule, we further place Ball on notice

that the instant case and many other actions currently filed by Ball may be subject to dismissal for failure to state a claim upon which relief may be granted, a ruling which would constitute a third strike, and could preclude Ball from filing further actions *in forma pauperis* in federal court.

## II.     Statement of Facts and of the Case

### A.     Dawn Marie Ball's Litigation History

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern. Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in things, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).

Furthermore. Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.

For example, recurring themes in Ball's lawsuits include Ball's penchant for smearing feces on herself and her cell, her destruction of her own clothing, and her use of her clothing to plug her toilet and flood her cell with water and human waste.  Ball is also, by her own admission, an inmate with a propensity of sudden, explosive rages, as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion regarding the aesthetic qualities of a piece of cornbread escalated in a matter of moments into a profanity-laced wrestling match over a food tray.

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has a total of twenty-two lawsuits pending before this Court.[1]  Ball is also a prodigiously unsuccessful litigant, who has had at least

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-

three prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit

failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by

this plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball

v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the District

Court dismissed this civil action, citing Ball's failure to exhaust her administrative

remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies
> with regard to the issues raised in the complaint. Plaintiff's failure to
> oppose the remaining Defendants' motion, which also seeks dismissal
> for failure to exhaust administrative remedies, renders the motion
> unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not
> properly before this Court and must be dismissed.

(Doc. 36, p.5)

While, fairly construed, the District Court's dismissal decision rested on exhaustion

grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal

order itself went on to state that any appeal of this dismissal would be "deemed

frivolous and not in good faith."   Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)

(Doc. 36, p.6)

---

CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux,
No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.).

Nonetheless, Ball appealed this ruling. (Doc. 37)  On July 22, 2010, the United

States Court of Appeals for the Third Circuit affirmed the dismissal of this action,

noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant
> to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to
> exhaust administrative remedies.  We agree with the District Court's
> decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.)(Doc. 44, p. 2-3).  Thus, the Court

of Appeals ruling, like the District Court's decision, was expressly based upon Ball's

failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman,

No. 1:09-CV-844 (M.D. Pa.).  This action was also dismissed by the District Court,

which on this occasion considered the merits of Ball's claims and explicitly

concluded that Ball had failed to state a claim upon which relief could be granted.

Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36).  Therefore, this

second dismissal involved a merits analysis of Ball's claims, and a determination that

Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28

U.S.C. § 1915(g).  Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-

844 (M.D. Pa.) (Doc 34), but her appeal of this case was summarily denied by the

Court of Appeals,  Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 48), and, on

October 29, 2010,  this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1)   On June 15, 2011, upon a screening review of this complaint, the District Court dismissed this action for failure to state a claim upon which relief could be granted. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011,  the Court of Appeals entered an opinion and order dismissing Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis

---

[2]28 U.S.C. § 1915(e)(2)(B)(i) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862, 2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

### B.   <u>Ball's Current Lawsuit</u>

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit.  Two weeks after the Court of Appeals affirmed this third dismissal order in a prior lawsuit brought by Ball, finding that lawsuit to be frivolous, Ball filed a battery of six new lawsuits, including this case.  <u>See, e.g.,</u>  <u>Ball v. Beckley</u>, No. 1:11-CV-1829 (M.D.Pa.); <u>Ball v. Sipe</u>, No. 1:11-CV-1830 (M.D.Pa.);  <u>Ball v. Craver</u>, No. 1:11-CV-1831 (M.D.Pa.);  <u>Ball v. Powley</u>, No. 1:11-CV-1832 (M..D.Pa.); <u>Ball v. Cooper</u>, No. 1:11-CV-1833 (M.D.Pa.); <u>Ball v. Famiglio</u>, No. 1:11-CV-1834 (M.D.Pa.).   In each instance, Ball's latest lawsuits were accompanied by motions for leave to proceed *in forma pauperis*.

In this particular case, Ball has made conclusory allegations of various constitutional infractions. However, the only well-pleaded facts in Ball's complaint are her assertion that she did not receive breakfast, some unidentified "medications," and personal hygiene supplies on a single occasion on the morning of July 9, 2011. (Doc. 1)  While Ball seeks injunctive and declaratory relief, along with $20,000 in compensatory and punitive damages, from each defendant, notably absent from Ball's complaint are any allegations or well-pleaded facts demonstrating that this "prisoner is under imminent danger of serious physical injury." 28 U.S.C. §1915(g).  In fact, Ball specifically refrained from identifying any "imminent danger of serious physical injury" when she filed her complaint, listing nothing in response to a question which asked whether she had suffered any serious physical injury. (Id.)

We initially ordered this complaint served upon the defendants. (Doc. 8)  Presented with this complaint, which is cast against this inmate's litigation history and background, the defendants have now moved to revoke Ball's *in forma pauperis* status, and dismiss this complaint. (Docs. 21-23)  Ball has responded to this motion. (Doc. 39)  Therefore, this matter is now ripe for resolution.

For the reasons set forth below, we recommend that the district court find, first, that Ball  has not, and cannot, credibly allege that she is in imminent damage of serious bodily harm as a result of the acts alleged in this complaint.  Therefore, she

may not take advantage of the imminent damage of serious bodily harm exception to §1915(g). However, we further recommend that the Court find that, at present, Ball has only had two cases that were dismissed "on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g), since one of the prior dismissal orders entered against Ball in previous litigation was based upon Ball's failure to exhaust her administrative remedies in the prison system, a ground for dismissal that typically is not considered a "strike" for purposes of §1915(g)'s three strike rule. However, given that we find that Ball has already incurred two strikes under §1915(g)'s three strike rule, we further recommend that Ball be placed on notice that a further screening analysis of the instant case indicates that it, too, may be subject to dismissal for failure to state a claim upon which relief may be granted, a ruling which would constitute a third strike, and could preclude Ball from filing further actions *in forma pauperis* in federal court.

## II.   DISCUSSION

### A.   28 U.S.C. §1915(g)– The Legal Standard.

Under the Prison Litigation Reform Act, this Court has an affirmative duty to screen and review prisoner complaints filed by inmates like Ball who seek leave to proceed *in forma pauperis*. 28 U.S.C. § 1915A. One aspect of this review, a review

"designed to filter out the bad claims and facilitate consideration of the good," <u>Jones v. Bock</u>,  549 U.S. 199, 204 ( 2007), entails ensuring that inmates who have abused this privilege in the past are not permitted to persist in further *in forma pauperis* litigation.  Towards that end, Congress enacted 28 U.S.C. §1915(g), which provides in pertinent part that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury

> 28 U.S.C. § 1915(g).

Congress enacted 28 U.S.C. § 1915(g) with the express purpose of "[d]eterring frivolous prisoner filings in the federal courts [a goal which] falls within the realm of Congress' legitimate interests." <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 318-19 (3d Cir. 2001).  With this goal in mind, it is well-settled that, "generally, a prisoner may not be granted IFP [*in forma pauperis*] status if, on three or more occasions, he brought an action that was dismissed as frivolous," <u>Brown v. City Of Philadelphia</u>, 331 F. App'x 898, 899, (3d Cir.2009), and inmates who attempt to bring such lawsuits *in forma pauperis* should have their complaints dismissed. <u>Id</u>.

11

In determining whether a particular inmate-plaintiff has had three prior dismissals, or "three strikes," under §1915(g), we look to the status of the plaintiff's prior litigation history at the time she filed the current lawsuit. Thus, only dismissals which were actually ordered at the time of the filing of the instant case are counted towards a "three strike" assessment under §1915(g), and "[a] dismissal does not qualify as a 'strike' for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights. See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999); Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir.1996)." Lopez v. U.S. Dept. of Justice, 228 F. App'x 218 (3d Cir. 2007). However, in assessing when a particular inmate plaintiff is subject to the gatekeeping provisions of § 1915(g), it is also clear that "lawsuits dismissed as frivolous prior to the enactment of the PLRA count as 'strikes' under § 1915(g). See Adepegba v. Hammons, 103 F.3d 383 (5th Cir.1996); Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir.1996); Green v. Nottingham, 90 F.3d 415 (10th Cir.1996)." Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 144 (3d Cir. 1997).

The grounds of dismissal cited by the court in its dismissal orders are also significant in this setting. Section 1915(g) provides that the preclusive effect of this three strikes rule only applies where each of the prior cases "was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may

12

be granted." Id.  Focusing on this statutory text, courts generally agree that the dismissal of an inmate lawsuit simply for failure to exhaust administrative remedies does  not constitute a dismissal "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." Therefore, such dismissals are typically not considered strikes for purposes of §1915(g)'s three strikes rule. See, e.g., Tolbert v. Stevenson, 635 F.3d 646 (4th Cir. 2011); Turley v. Goetz, 625 F.3d 1005 (7th Cir, 2010); Tafari v. Hues, 473 F.3d 440 (2d Cir. 2007); Owens v. Isaac, 487 F.3d 561 (8th Cir. 2007);  Green v. Young, 454 F.3d 405 (4th Cir. 2006); Henry v. Medical Dept. at SCI Dallas, 153 F.Supp. 2d. 153, 155 (M.D. Pa. 2001).

Once it is determined that an inmate-plaintiff has had at least three prior lawsuits dismissed "on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g) compels denial of in forma pauperis status and dismissal of in forma pauperis lawsuits unless the inmate alleges that he or she "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).  With respect to this specific statutory exception, it is clear that:

> The clause "unless he is in imminent danger of serious physical injury"
> is an exception to the preclusive effect of the statute. But the exception
> is cast in the present tense, not in the past tense, and the word "is" in the
> exception refers back to the same point in time as the first clause, i.e.,
> the time of filing. The statute contemplates that the "imminent danger"

will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who "is" in danger, nor can that past danger reasonably be described as "imminent."

Abdul-Akbar v. McKelvie, 239 F.3d at 313.

Moreover, in making this assessment of imminent danger:

A court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit "factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir.1998) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). The Supreme Court has directed that, in assessing a case under 28 U.S.C. § 1915, we are not required to accept without question the truth of the plaintiff's allegations. See Denton, 504 U.S. at 32. Rather, we may be guided by judicially noticeable facts in determining whether the allegations are baseless or wholly incredible.

Brown v. City Of Philadelphia, 331 F. App'x at 900.

## B.    Application of §1915(g)'s Three Strike Rule  to This Lawsuit

In this case, Ball has opposed this motion to revoke her *in forma pauperis* status, advancing two principal arguments why §1915(g)'s three strike rule should not apply to this case.  First, belatedly adopting a globally expansive view of what constitutes "imminent danger of serious physical injury" under 28 U.S.C. § 1915(g), Ball argues that she is exempt from §1915(g) because she is daily under imminent threat of serious bodily injury

14

We conclude that Ball cannot avail herself in this case of the "imminent danger" exception to § 1915(g)'s preclusive effect in this particular case through belated and far-reaching claims of largely unidentified and unrelated threats to her safety.  Ball has not pleaded in her complaint that she is in imminent danger of serious bodily injury. (Doc. 1)  Quite the contrary, when specifically asked whether she faced an imminent risk of serious bodily injury at the time she filed this complaint, Ball said nothing which indicated an imminent risk to her safety. (Id.) Ball's silence on this score is completely understandable since the nature of her claims simply do not lend themselves to credible assertions of imminent bodily harm. Ball's complaint simply alleges that she did not receive breakfast, some unnamed medication, and some personal hygiene supplies on a single occasion, July 9, 2011. Given the nature of these allegations, allegations which Ball did not choose to characterize as an imminent danger of serious bodily harm when she filed her complaint, this Court can justifiably discredit any belated "factual claims of imminent danger [as] 'clearly baseless,' i.e., allegations that are fantastic or . . . rise to the level of the 'irrational or wholly incredible,' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir. 1998).  Furthermore, Ball's contentions on this score ignore the fact that she must plead that the harm she faces *is imminent*.  As the Court of Appeals has aptly noted, this "exception is cast in the present tense, not in the past tense, and the word 'is' in

the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the 'imminent danger' will exist contemporaneously with the bringing of the action.  Someone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent.' " Abdul-Akbar v. McKelvie, 239 F.3d at 313.

This proposition that the imminent danger must exist at the time of the filing of the complaint is also fatal to Ball's efforts to take advantage of this particular exception to §1915(g)'s three strike rule.  In short, whatever safety risk Ball may have faced on July 6, 2011, when she allegedly missed breakfast, had long since passed by the time she filed her complaint in October 2011.  Therefore, since "[s]omeone whose danger has passed cannot reasonably be described as someone who 'is' in danger, nor can that past danger reasonably be described as 'imminent,'" id., and  this Court can justifiably discredit any belated "factual claims of imminent danger [as] 'clearly baseless,' i.e., allegations that are fantastic or . . . rise to the level of the 'irrational or wholly incredible,' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir. 1998), Ball's current

16

allegations in this particular lawsuit do not constitute the type of "imminent danger of serious physical injury' contemplated under §1915(g).[3]

Yet, while Ball cannot entirely avoid the reach of §1915(g) simply by claiming that she is in some type of danger, we find that the defendants' motion is premature since Ball has not yet incurred three strikes.  Rather, we conclude that Ball is on the praecipe of this three strike bar, having incurred two full strikes, but–by the slimmest of margins–believe that she is not yet subject to this statutorily-mandated bar.  In reaching this conclusion, we find that two of the prior dismissals suffered by Ball, in Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.) and Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.), plainly constitute strikes under §1915(g).  In both instances, the District Court dismissed Ball's complaint for failure to state a claim upon which relief can be granted, a grounds for invoking §1915(g)'s statutory preclusion.  Moreover, in both

---

[3] Ball's claims that she suffers from imminent bodily harm are further undermined by the declaration provided by Dr. Gregory Famiglio, current Medical Director at SCI-Muncy, and one of Ball's treating physicians. (Doc. 23, declaration of Dr. Gregory Famiglio, Exhibit C.) Dr. Famiglio reports that the Plaintiff demands care on an almost daily basis yet she has no need for such care. (Id., ¶ 6.) The Plaintiff claims back pain, headaches, fungal scalp infections and numerous other conditions that have not been supported by any objective findings or examinations.( Id., ¶ 9.) According to Dr. Famiglio, currently, the Plaintiff is in stable condition with no current conditions requiring regular monitoring let alone treatment. (Id., ¶ 13.) Moreover, in some instances Ball's past ailments have been a product of her own bizarre institutional behavior, such as the fecal borne lung infection she contracted as a result of frequently handling her own waste, and smearing feces on her cell.

instances, Ball exhausted her appeals, and the appellate court also found her complaints to be without merit.  Indeed, the Court of Appeals' rulings in both cases were tantamount to declarations that Ball's cases, and appeals, were frivolous. Therefore, Ball clearly comes before this Court now subject to two prior strikes.

However, with respect to the third prior dismissal suffered by Ball to date, in Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.), while the District Court stated that any appeal of the dismissal order would be "deemed frivolous and not in good faith." Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6), suggesting that the case was being dismissed as frivolous, closer examination reveals the dismissal to have been based on Ball's failure to exhaust her administrative remedies.  As we have noted, typically the dismissal of an inmate lawsuit simply for failure to exhaust administrative remedies does not constitute a dismissal "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." Therefore, such dismissals are not considered strikes for purposes of §1915(g)'s three strikes rule. See, e.g., Tolbert v. Stevenson, 635 F.3d 646 (4th Cir. 2011); Turley v. Goetz, 625 F.3d 1005 (7th Cir, 2010); Tafari v. Hues, 473 F.3d 440 (2d Cir. 2007); Owens v. Isaac, 487 F.3d 561 (8th Cir. 2007);  Green v. Young, 454 F.3d 405 (4th Cir. 2006); Henry v. Medical Dept. at SCI Dallas, 153 F.Supp. 2d. 153, 155 (M.D. Pa. 2001).  In this case, we recognize that some of the language employed in the

dismissal of <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.), could be construed as a finding that the case was "deemed frivolous and not in good faith," <u>Ball v. SCI Muncy</u>, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6), and would constitute Ball's third strike. However, on balance, we believe that the better view is that this dismissal rested on administrative exhaustion grounds and, therefore, should not be considered a strike for purposes of §1915(g).

C.    <u>**Ball Should be Placed On Notice That Any Additional Merits Dismissals May Bar Future Filings By The Plaintiff Under 28 U.S.C. §1915(g)**</u>

While we recommend that this motion to revoke *in forma pauperis* status be denied since Ball has incurred only two strikes, as a matter of fundamental fairness to the plaintiff we are compelled to place her on notice that, pursuant to 28 U.S.C. §1915(g), she now stands on the verge of losing the opportunity to file further actions in federal court *in forma pauperis* due to her past history of meritless and frivolous litigation. Indeed, one additional dismissal of any case for failure to state a claim will entitle future defendants to seek to deny Ball *in forma pauperis* status.

We place Ball on notice of this fact for four reasons: First, we wish to be entirely fair to Ball, so that she can fully understand the consequences which may soon flow from her litigation choices. Second, by providing this notice to Ball we ensure that Ball cannot be heard to complain in the future that she lacked notice of

the fact that her current litigation choices could cause her to forfeit the opportunity to file cases *in forma pauperis* in the future.

Third, we recognize that Ball currently has at least seven cases[4] pending before this Court where there have been reports and recommendations issued, or adopted, recommending dismissal of claims.   Ball should be aware that any one of these dismissals could ultimately constitute a third merits dismissal.   Since that third dismissal may well severely restrict Ball's ability to appear as an *in forma pauperis* litigant in the future, as a matter of basic fairness to Ball we recommend that she re-examine whether she wishes to further pursue these particular matters.

Finally, we are compelled to place Ball on notice that our on-going statutorily mandated merits screening of the instant case leads us to conclude that this complaint may also fail to state a claim upon which relief can be granted.   As Ball knows, this Court has a statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials.   Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

---

[4]Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.).

**(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a  prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

(1) is frivolous, malicious, or fails to state a claim upon which relief may be  granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>  –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more

heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that,

when considering a motion to dismiss, a court should "begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of

truth."  Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Id. at 1949.  Rather, in conducting a review of the adequacy of complaint,

the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth. While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions.  Rather, a complaint must recite factual

allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First, the
> factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these standards, we place the plaintiff on notice the claims set forth in her current *pro se* complaint may fail to state a claim upon which relief can be granted. At the outset, liberally construed, the gravamen of Ball's complaint is that prison officials violated Ball's rights under the Eighth Amendment to the United

States Constitution by displaying "deliberate indifference" to this inmate's needs when they failed to provide her breakfast, some unspecified medicine, and personal hygiene supplies on a single occasion, on the morning of July 9, 2011.  Ball faces an exacting burden in advancing these Eighth Amendment claims against prison officials in their individual capacities.  To sustain such claims, Ball must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a

25

substantial risk of serious harm.' <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994). A

prisoner plaintiff must prove that the prison official 'knows of and disregards an

excessive risk to inmate health or safety.' <u>Id</u> . at 837." <u>Garvey v. Martinez</u>, 08-2217,

2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement

claims like those apparently advanced by Ball. In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with
> "evolving standards of decency that mark the progress of a maturing
> society." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d
> 251 (1976) (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101, 78 S.Ct. 590, 2
> L.Ed.2d 630 (1958)). Conditions of prison confinement violate the
> Eighth Amendment only if they "deprive inmates of the minimal
> civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S.
> 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

<u>Atkinson v. Taylor</u>, 316 F.3d 257, 272 (3d Cir. 2003).

In a prison setting, courts frequently rebuff inmate complaints like those made

here relating to a single incident regarding provision of medicine or hygiene supplies,

or the packaging and presentation of meals, finding that those isolated claims do not

state an infraction of a constitutional dimension. Thus, with respect to prison diet

complaints "while prisoners are guaranteed a nutritionally adequate diet under the

Eighth Amendment, <u>see</u> <u>Ramos v. Lamm</u>, 639 F.2d 559, 571 (10th Cir.1980), there

is no constitutional right to hot meals. See <u>Brown-El v. Delo</u>, 969 F.2d 644, 648 (8th

Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were violated when he was served cold food)." <u>Laufgas v. Speziale</u>, 263 F.App'x. 192, 198 (3d Cir. 2008).  Nor does the presentation of food in an unappetizing fashion, by itself, violate the Eighth Amendment.  Quite the contrary, with respect to this prison diets it is well-settled that: "[U]nappetizing food served in prison is not constitutionally actionable. <u>Maldonado v. McFaden</u>, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa. Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner.')." <u>Jones v. Beard</u>, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011).

Similarly, it is entirely clear that the conduct alleged here by Ball, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. <u>See</u> <u>Robles v. Coughlin</u>, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." <u>Lindsey v. O'Connor</u>, 327 F.App'x. 319, 321 (3d Cir. 2009). Therefore, Ball's complaints regarding the presentation of her meals simply do not rise to the level of a constitutional infraction.

Furthermore, courts have repeatedly held that inmate Eighth Amendment claims, like those made here, which rest upon a single alleged failure to provide

personal hygiene supplies to a prisoner; see e.g., <u>Banks v. Mozingo</u>, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); <u>Adderly v. Ferrier</u>, 419 F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); <u>Fortune v. Hamberger</u>, 379 F. App'x 116 (3d Cir. 2010)( denying inmate claim involving 15 day alleged denial of hygienic material); <u>Benjamin v. Fraser</u>, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); <u>Stead v. Skinner</u>, 10-4526, 2011 WL 3882809, *4 (N.D.Ill., Sept 2, 2011), or the allegation of a brief delay in providing unspecified medicine to an inmate; <u>Bickel v. Miller</u>, No. 11-2987, 2011 WL 4526960 (3d Cir. Sept. 20, 2011), do not state a constitutional claim upon which relief may be granted.  As the Court of Appeals has observed, such claims cannot rest upon "a mere isolated episode of inadvertence, but [instead require proof of] persistent conduct in the face of resultant pain and risk of permanent injury." <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

In sum, as a matter of fundamental fairness to the Plaintiff, we place Ball on notice that the claims she advances in the instant lawsuit and in a number of prior filings may all be subject to dismissal for failure to state a claim upon which relief can be granted, a development which could also severely limit Ball's ability to pursue *in*

28

*forma pauperis* litigation in the future.  While Ball may act to avoid this potential outcome, she should act promptly.[5]

## IV.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to revoke the plaintiff's leave to proceed *in forma pauperis* be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of

---

[5]Ball is advised that she may avoid incurring this third strike simply  by voluntarily dismissing any actions which she now considers to be without merit prior to the entry of an order dismissing an action with prejudice for failure to state a claim upon which relief may be granted. See Tolbert v. Stevenson, 635 F.3d 646 (4th Cir. 2011).

that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 30th day of January 2012.

> ***S/Martin C.  Carlson***
> Martin C. Carlson
> United States Magistrate Judge