# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN BALL,** | : | **CIVIL NO. 1:11-CV-1831** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| | : | |
| **CAPTAIN CRAVER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

I.    **Statement of Facts and of the Case**

A.    **Dawn Marie Ball's Litigation History**

In many ways, Dawn Ball's current circumstances inspire both sorrow and concern.  Dawn Ball is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and who has candidly acknowledged that she is profoundly disturbed.  Ball v. Beard, No. 1:09-CV-845 (Doc. 42, pp.6-7).  Furthermore, Ball is also an inmate who has reported to the Court that she engages in multiple episodes of destructive, self-defeating and senseless behavior.  For

example, recurring themes in Ball's lawsuits include Ball's penchant for smearing

feces on herself and her cell, her destruction of her own clothing, and her use of her

clothing to plug her toilet and flood her cell with water and human waste.  Ball is

also, by her own admission, an inmate with a propensity of sudden, explosive rages,

as illustrated by the civil complaint which she has filed Ball v. Barr, No.1:11-CV-

2240 (M.D.Pa.).  In this complaint, Ball describes an episode in which a discussion

regarding the aesthetic qualities of a piece of cornbread escalated in a matter of

moments into a profanity-laced wrestling match over a food tray.

Ball is a prodigious federal court litigant, bringing numerous lawsuits based

upon her perception of the events that take place around her in prison.  Indeed, at

present Ball currently has more than 25 lawsuits pending before this Court.[1]  Ball is

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.); Ball v. Eckroth, No. 1:11-CV-2238 (M.D.Pa.); Ball v. Campbell, No. 1:11-CV-2239 (M.D.Pa.); Ball v Barr, No. 1:11-CV-2240 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-10 (M.D.Pa.); Ball v Giroux, No. 1:12-CV-11 (M.D.Pa.); Ball v Curham, No. 1:12-CV-12 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-812 (M.D.Pa.); Ball v. Giroux, No. 1:12-CV-813 (M.D.Pa.); Ball v. Hummel, No. 1:12-CV-814 (M.D.Pa.); Ball v. D'Addio, No. 1:12-CV-815

also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either as frivolous or on the grounds that the lawsuit failed to state a claim upon which relief could be granted.

The history of repeated, frivolous and meritless litigation in federal court by this Plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the District Court dismissed this civil action, citing Ball's failure to exhaust her administrative remedies, and stating that Ball:

> does not dispute that she failed to exhaust her administrative remedies with regard to the issues raised in the complaint. Plaintiff's failure to oppose the remaining Defendants' motion, which also seeks dismissal for failure to exhaust administrative remedies, renders the motion unopposed. See L.R. 7.6. It is clear that Plaintiff's claims are not properly before this Court and must be dismissed.

(Doc. 36, p.5)

While, fairly construed, the District Court's dismissal decision rested on exhaustion grounds, and did not entail an analysis of the merits of Ball's claims, the dismissal order itself went on to state that any appeal of this dismissal would be "deemed frivolous and not in good faith."   Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36, p.6)

_____

(M.D.Pa.) .

3

Nonetheless, Ball appealed this ruling.  (Doc. 37)  On July 22, 2010, the United States Court of Appeals for the Third Circuit affirmed the dismissal of this action, noting that:

> The District Court granted the Defendants' motions to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds of failure to exhaust administrative remedies. We agree with the District Court's decision and accordingly affirm the dismissal of Ball's claims.

Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 44, p. 2-3).  Thus, the court of appeals ruling, like the District Court's decision, was expressly based upon Ball's failure to exhaust her administrative remedies.

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.).  This action was also dismissed by the District Court, which on this occasion considered the merits of Ball's claims and explicitly concluded that Ball had failed to state a claim upon which relief could be granted. Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36).  Therefore, this second dismissal involved a merits analysis of Ball's claims, and a determination that Ball's complaint "fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g).  Ball appealed this dismissal order, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc 34), but her appeal of this case was summarily denied by the court of appeals,   Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 48), and, on

October 29, 2010, this case was closed by the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B).[2]   Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48).

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1).   On June 15, 2011, upon a screening review of this complaint, the District Court dismissed this action for failure to state a claim upon which relief could be granted.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal.  Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10). On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous  pursuant to 28 U.S.C. § 1915(e)(2)(B).  That appellate court opinion and order spoke unambiguously regarding the frivolous nature of this particular lawsuit filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis

---

[2] 28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010 ruling was tantamount to a declaration that this action was also frivolous.

either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." <u>Gallas v. Supreme Court of Pa.</u>, 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal.

<u>Ball v. Butts</u>, No. 11-2862,  2011 WL 4375782, *1 (3d Cir. Sept. 21, 2011).

In addition to these dismissals, which all pre-dated the filing of the instant complaint, Ball currently has at least ten other cases[3]  pending before this Court where there have been reports and recommendations issued, or adopted, calling for dismissal of claims.

### B.    Ball's Current Lawsuit

It is against the backdrop of this history of unsuccessful, unexhausted and meritless filings that Ball instituted the current lawsuit.  Two weeks after the court of

---

[3]<u>Ball v. Beard</u>, No. 1:09-CV-845 (M.D.Pa.); <u>Ball v. Lamas</u>, No. 1:09-CV-846, (M.D. Pa.); <u>Ball v. Sisley</u>, No. 1:11-CV-877 (M.D.Pa.); <u>Ball v. Campbell</u>, No. 1:11-CV-2239 (M.D.Pa.); <u>Ball v Barr</u>, No. 1:11-CV-2240 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-10 (M.D.Pa.); <u>Ball v Giroux</u>, No. 1:12-CV-11 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-812 (M.D.Pa.); <u>Ball v. Giroux</u>, No. 1:12-CV-813 (M.D.Pa.);  <u>Ball v. D'Addio</u>, No. 1:12-CV-815 (M.D.Pa.) .

appeals affirmed this third dismissal order in a prior lawsuit brought by Ball, Ball filed a battery of six new lawsuits, including this case. See, e.g., Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.).

In this particular case, Ball has made conclusory allegations of various constitutional infractions. However, the only well-pleaded facts in Ball's complaint are her assertion that she did not receive breakfast, some unidentified "medications," and personal hygiene supplies on a single occasion on the morning of July 9, 2011. (Doc. 1)  Ball seeks injunctive and declaratory relief, along with $20,000 in compensatory and punitive damages, from each Defendant.  (Id.)

We have already placed Ball on notice that these claims may be subject to dismissal.  On January 30, 2012, we denied a defense request to revoke Ball's *in forma pauperis* status pursuant to 28 U.S.C. §1915(g), based upon the claim that Ball had previously filed three or more actions which had been dismissed as frivolous. (Doc. 49.) While we denied this request, we found that Ball had two strikes under Section 1915(g)'s three-strike provision, since she had incurred the dismissal of two prior lawsuits as frivolous.  As a matter of fundamental fairness to Ball, we then

advised the Plaintiff that the instant lawsuit might also be subject to dismissal for failure to state a claim upon which relief may be granted.  Despite this explicit warning from the Court, Ball took no action to correct, or amend, her complaint. Instead, inexplicably, she filed an interlocutory appeal of this favorable ruling.

The Defendants have now moved to dismiss this complaint.  (Docs. 61-62) Ball has responded to this motion.  (Doc. 69)  Therefore, this matter is now ripe for resolution.  For the reasons set forth below, we recommend that the Defendants' motion to dismiss be GRANTED.

## II.   Discussion

### A.   Motion to Dismiss, Rule 12(b)(6)–Standard of Review

The Defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our

opinion in <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u> at 555.  "Factual allegations must be enough to raise a right

to relief above the speculative level." Id.  In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal  conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to  show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In  practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:  "First, the court must 'tak[e] note of the elements a plaintiff must

plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the

assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629

F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## B.    Ball's Eighth Amendment Claims Fail

Judged against these standards, we find that the claims set forth in Ball's current *pro se* complaint fail to state a claim upon which relief can be granted.  At the outset, liberally construed, the gravamen of Ball's complaint is that prison officials violated Ball's rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to this inmate's needs when they failed to provide her breakfast, some unspecified medicine, and personal hygiene supplies on a single occasion, on the morning of July 9, 2011.  Ball faces an exacting burden in

advancing these Eighth Amendment claims against prison officials in their individual

capacities.  To sustain such claims, Ball must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be,
> objectively, sufficiently serious;" and (2) the "prison official must have
> a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825,
> 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and
> citations omitted).  In prison conditions cases, "that state of mind is one
> of 'deliberate indifference' to inmate health or safety." Id. "Deliberate
> indifference" is a subjective standard under Farmer-the prison official-
> defendant must actually have known or been aware of the excessive risk
> to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark,

the courts have held that a mere generalized knowledge that prisons are dangerous

places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F.

App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-

plaintiff complained about cellmate who had a history of psychological problems, but

where plaintiff failed to articulate a specific threat of harm during the weeks prior to

an attack.)  In short, when "analyzing deliberate indifference, a court must determine

whether the prison official 'acted or failed to act despite his knowledge of a

substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A

prisoner plaintiff must prove that the prison official 'knows of and disregards an

excessive risk to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217,

2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to conditions of confinement

claims like those apparently advanced by Ball.  In this setting, it is clear that:

> The Eighth Amendment prohibits punishments inconsistent with
> "evolving standards of decency that mark the progress of a maturing
> society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d
> 251 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2
> L.Ed.2d 630 (1958)). Conditions of prison confinement violate the
> Eighth Amendment only if they "deprive inmates of the minimal
> civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S.
> 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)

Atkinson v. Taylor, 316 F.3d 257, 272 (3d Cir. 2003).

In a prison setting, courts frequently rebuff inmate complaints like those made

here relating to a single incident regarding provision of medicine or hygiene supplies,

or the packaging and presentation of meals, finding that those isolated claims do not

state an infraction of a constitutional dimension.  Thus, with respect to prison diet

complaints "while prisoners are guaranteed a nutritionally adequate diet under the

Eighth Amendment, see Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980), there

is no constitutional right to hot meals.  See Brown-El v. Delo, 969 F.2d 644, 648 (8th

Cir.1992) (finding frivolous prisoner's claim that his constitutional rights were

violated when he was served cold food)." Laufgas v. Speziale, 263 F. App'x. 192,

198 (3d Cir. 2008).  Nor does the presentation of food in an unappetizing fashion, by itself, violate the Eighth Amendment.  Quite the contrary, with respect to this prison diets it is well-settled that: "[U]nappetizing food served in prison is not constitutionally actionable. Maldonado v. McFaden, No. 94–1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D.Pa. Nov. 23, 1994) ('[T]he Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner.')." Jones v. Beard, No. 10-5544, 2011 WL 3611470, *8 (E.D.Pa. August 16, 2011).

Similarly, it is entirely clear that the conduct alleged here by Ball, the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)." Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009). Therefore, Ball's complaints regarding the presentation of her meals simply do not rise to the level of a constitutional infraction.

Furthermore, courts have repeatedly held that inmate Eighth Amendment claims, like those made here, which rest upon a single alleged failure to provide personal hygiene supplies to a prisoner; see e.g., Banks v. Mozingo, 423 F. App'x

123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged

in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419

F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of

hygienic material); Fortune v. Hamberger, 379 F. App'x 116 (3d Cir. 2010)( denying

inmate claim involving 15 day alleged denial of hygienic material); Benjamin v.

Fraser, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene

products and toilet paper did not establish a constitutional violation); Stead v.

Skinner, 10-4526, 2011 WL 3882809, *4 (N.D.Ill. Sept 2, 2011), or the allegation of

a brief delay in providing unspecified medicine to an inmate; Bickel v. Miller, No.

11-2987, 2011 WL 4526960 (3d Cir. Sept. 20, 2011), do not state a constitutional

claim upon which relief may be granted.  As the court of appeals has observed, such

claims cannot rest upon "a mere isolated episode of inadvertence, but [instead require

proof of] persistent conduct in the face of resultant pain and risk of permanent

injury." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

In her response to this motion, Ball seeks to avoid dismissal of this complaint

by suggesting, without any further explanation that prison officials have engaged in

some other misconduct.  Ball's claims are unavailing for several reasons.

First, to the extent that Ball is attempting in a motions response to amend her complaint it is well-settled that a Plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").  Moreover, Ball's assertions in her motions papers are entirely devoid of factual details, and thus constitute nothing more than the formulaic recital of the elements of a cause of action, a form of pleading that simply will not do.  Finally, the timing of the filing of this complaint rebuts any suggestion that there are additional well-pleaded facts that are temporally related to this incident.  The matters about which Ball complains occurred during a single morning in July 2011.  Ball filed her complaint three months later, in October 2011.  Ball is a highly practiced and prolific *pro se* litigant.  If there had been further well-pleaded facts which had occurred between July and October 2011 relating to this episode, it is inconceivable that an

17

experienced litigator like Ball would have persistently neglected to mention those facts.

Finally, even if Ball had stated a colorable constitutional claim relating to her right to hot meals served on trays, or the return of multiple tubes of toothpaste, the Defendants were nevertheless entitled to qualified immunity from these claims for damages.  In order to establish a civil rights claim Ball must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  Satisfying these elements alone, however, does not guarantee that Ball is entitled to recover damages from these public officials.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999);  see also Pearson v. Callahan, 555 U.S. 223, 231 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity."  Wilson, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional

rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 241-42, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity

entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, prison officials were confronted by a difficult, obstreperous inmate.  On these facts, given that the "purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation. See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir.1983) (only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim)," Lindsey v. O'Connor, 327 F. App'x. 319, 321 (3d Cir. 2009), and recognizing that inmate Eighth Amendment claims, like those made here, which rest upon a single alleged failure to provide personal hygiene supplies to a prisoner; see, e.g.,Banks v. Mozingo, 423 F. App'x 123 (3d Cir. 2011)(denying inmate hygiene complaint as ironic where inmate engaged in un-hygienic behavior, including smearing feces on cell); Adderly v. Ferrier, 419 F. App'x 135 (3d Cir. 2011)(denying inmate claim involving 7 day alleged denial of hygienic material); Fortune v. Hamberger, 379 F. App'x 116 (3d Cir. 2010) (denying inmate claim involving 15 day alleged denial of hygienic material); Benjamin v. Fraser, 161 F.Supp.2d 151, 177 (S.D.N.Y.2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation); Stead v.

Skinner, 10-4526, 2011 WL 3882809, *4 (N.D.Ill. Sept. 2, 2011), or the allegation

of a brief delay in providing unspecified medicine to an inmate; Bickel v. Miller, No.

11-2987, 2011 WL 4526960 (3d Cir. Sept. 20, 2011), do not state a constitutional

claim upon which relief may be granted, prison officials could not reasonably have

anticipated that their alleged actions in failing to provide these items on a single

occasion would violate some clearly established constitutional right of the plaintiff.

In short, given the state of the law in this field, in this setting the Defendants simply

could not have recognized that their actions would violate "clearly established

statutory or constitutional right[] of which a reasonable person would have known."

Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore, the Defendants are entitled

to qualified immunity on these claims.[4]

In sum, in this case Ball's complaint presents legally bankrupt claims, leveling

a series of meritless allegations, and we find that the Defendants were entitled to

qualified immunity on all of Ball's claims.  Having concluded that this *pro se*

complaint was flawed in multiple and profound ways, we recognize that in civil rights

cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint

before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote

---

[4]In appropriate cases this court is entitled to address this qualified immunity
defense *sua sponte*. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua
sponte* recommendation of qualified immunity by U.S. magistrate judge).

Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).   In this case, Ball was given this opportunity to amend her complaint, and has now forfeited this opportunity through her inaction.  Since we have found that her complaint fails to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of this complaint make it clear that she has no right to relief, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, it is recommended that the complaint be dismissed as frivolous for failure to state a claim without further leave to amend.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's complaint be dismissed as frivolous for failure to state a claim with prejudice and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties,

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 22nd day of May 2012.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge